United States District Court
Eastern District of New York
------------------------------------------------------------------x
Elijah Anderson,

                                  Plaintiff,          **First Amended Complaint and Demand for a Jury Trial**

                                  -v-                       16-CV-150 (ERK) (LB)

The City of New York, New York City Police Department ("NYPD") Officer Alexis Yanez (Shield No. 23098), NYPD Captain Roberto Melendez, NYPD Lieutenant Michael Doyle, NYPD Sergeant Robert Agate (Shield No. 3869), NYPD Officer David Quattrocchi (Shield No. 15010), NYPD Officer John Doe, in their individual capacities,

                                Defendants.
------------------------------------------------------------------x

Plaintiff Elijah Anderson, through his attorney Robert M. Quackenbush of Rankin & Taylor, PLLC, as and for his first amended complaint, does hereby state and allege:

### Preliminary Statement

1. This is a civil rights action brought to vindicate plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, and pendent claims under the laws of the State of New York.

2. Plaintiff Elijah Anderson's right to be free from unreasonable searches and seizures were violated when officials of the New York City Police Department ("NYPD") entered his home without a warrant, exigent circumstances, or consent. By reason of defendants' warrantless entry into Mr. Anderson's home and subsequent arrest without probable cause, Mr. Anderson was deprived of his rights secured by the Fourth and Fourteenth Amendments.

3. Mr. Anderson accordingly seeks an award of compensatory and punitive damages and attorneys' fees.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that Mr. Anderson's claims arose in the County of Kings in the State of New York, within the confines of this judicial district.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

7. Pursuant to New York State General Municipal Law § 50-e, Mr. Anderson filed a timely Notice of Claim with the New York City Comptroller on or about April 3, 2015, within 90 days of the events herein complained of. Thus, this Court has supplemental jurisdiction over Mr. Anderson's claims against defendants under the laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

8. Mr. Anderson's claims were not adjusted by the New York City Comptroller's Office within the period of time provided by statute.

### Parties

9. Plaintiff Elijah Anderson was at all times relevant to this action a resident of the County of Kings in the State of New York. On March 13, 2015, Mr. Anderson resided at 920 Vermont Street, Apt. 7-H.

10. Defendant The City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department

which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

11. Defendants NYPD Officer Alexis Yanez (Shield No. 23098), NYPD Captain Roberto Melendez, NYPD Lieutenant Michael Doyle, NYPD Sergeant Robert Agate (Shield No. 3869), NYPD Officer David Quattrocchi (Shield No. 15010), and NYPD Officer John Doe (all referred to collectively as the "officer-defendants") were, at all times relevant herein, officers, employees and agents of the NYPD.

12. The true name, rank and shield number of Officer John Doe are not currently known to Mr. Anderson.[1] However, (s)he was an employee or agent of the NYPD on March 13, 2015. Accordingly, (s)he may be entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k.

13. The Law Department, then, is hereby put on notice (a) that Mr. Anderson intends to name "John Doe" as defendant in an amended pleading once their true name, rank, and shield number become known and (b) that the Law Department should immediately begin preparing the their defenses in this action.

14. The officer-defendants are being sued herein in their individual capacities.

15. At all times relevant herein, the officer-defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of

---

[1] By referring to this defendant as "John Doe," Mr. Anderson is making no representation as to the gender appearance of these defendants.

NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

16. The officer-defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of Mr. Anderson's rights.

17. At all relevant times, the officer-defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

### Statement of Facts

18. The events described herein occurred on March 13, 2015 at approximately 1:30 a.m. inside and in the vicinity of 920 Vermont Street in Brooklyn, New York.

19. The apartment building located at 920 Vermont Street is owned and operated by the New York City Housing Authority.

20. Outside 920 Vermont Street, the officer-defendants approached plaintiff Elijah Anderson and asked if he knew a person by the name of A.S.[2]

21. Mr. Anderson told the officer-defendants that A.S. lived in the same apartment as he did.

22. One of the officer-defendants told Mr. Anderson to take them into the apartment.

23. The officer grabbed Mr. Anderson by the arm and forced him to walk up to the seventh floor, followed on foot by the other officers, where Mr. Anderson lived.

---

[2] The name abbreviation is being used herein to protect the privacy of a non-party in this public filing.

24. While other officers crowded around the door to apartment 7-H, Mr. Anderson knocked on the door so he alone could gain entry and ask the other residents whether they wanted to the police to enter.

25. However, just as D.R., a resident of the apartment, was opening the door from the inside to answer the knock, the officer-defendants forcibly pushed Mr. Anderson into and across the threshold of the doorway, causing the door to fly open and Mr. Anderson to be pushed inside by the intruding officer-defendants.

26. The officer-defendants did not have a warrant to enter the apartment at that time.

27. None of the other occupants, including Mr. Anderson, consented to officers entering the apartment.

28. Multiple residents present at the time affirmatively objected to the officers' entry.

29. At the time the officers entered the apartment, Mr. Anderson and D.R., along with *inter alia* A.S. and other residents, were inside the apartment in the various rooms.

30. Without any of the occupants' consent, the officer-defendants began searching throughout the entire apartment.

31. One or more of the officer-defendants emerged from the bedroom containing A.S., claiming to have found marijuana and a box of credit cards.

32. Mr. Anderson was then taken, in handcuffs, to the NYPD's 75th Precinct stationhouse located at 1000 Sutter Avenue in Brooklyn.

33. Some time later, and based upon the officer-defendants' alleged observations during their unlawful, warrantless search of the apartment, a search warrant was obtained for Apartment 7-H.

34. Upon information and belief, the warrant application contained material misrepresentations and omissions, including but not limited to alleging that the prior entry into the apartment was consented to by one or more of the residents or occupants.

35. Upon information and belief, officers then executed the search warrant and seized property inside.

36. Mr. Anderson requested access to a phone while inside the stationhouse so that he could contact family about the arrests, but the officer-defendants repeatedly refused his requests.

37. While in custody, the officer-defendants interrogated Mr. Anderson and the other arrestees concerning A.S., prolonging the detention.

38. More than 48 hours after the arrest, Mr. Anderson was presented to the criminal court and was charged with unlawful possession of marijuana, N.Y. Pen. L. § 221.05. He was thereafter released on his own recognizance.

39. The charges against Mr. Anderson were subsequently adjourned in contemplation of dismissal.

**First Claim for Relief**
**Violation of Rights Guaranteed by the Fourth and Fourteenth Amendments**
**42 U.S.C. § 1983**
*(Against all defendants)*

40. Mr. Anderson incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

41. By seizing Mr. Anderson outside the apartment building without reasonable suspicion or probable cause, by entering his apartment without a warrant, exigent circumstances, or consent, by forcibly detaining Mr. Anderson inside his home after the unlawful entry, by formally arresting Mr. Anderson without probable cause to believe he had committed any offense, by refusing to grant Mr. Anderson's requests to use a telephone while in custody as

required by New York Criminal Procedure Law § 140.20(7), by subsequently obtaining a search warrant based upon fraudulent information (including but not limited to swearing that their prior entry into the apartment was based upon consent of the occupants), by failing to intervene to prevent other officer-defendants from committing the above-referenced acts and omissions, and by the other acts and omissions described above, the officer-defendants acted under color of state law and deprived Mr. Anderson of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including but not limited to deprivation of the following constitutional rights: (a) freedom from unreasonable searches and seizures of his person, home, papers, effects, and other personal property; (b) freedom from false arrest and false imprisonment; (c) freedom from unlawful entry into, and search of, Mr. Anderson's home, within the meaning of *Payton v. New York*, 445 U.S. 573; (d) freedom from abuse of process; (e) freedom from having police officers fabricate evidence against him; and (f) freedom from deprivation of liberty without due process of law.

42. At all times material to this complaint, defendant City had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein. These policies, practices, customs and usages were described in a recent report published by New York City's Civilian Complaint Review Board ("CCRB") entitled "Crossing the Threshold: An Evaluation of Civilian Complaints of Improper Entries and Searches by the NYPD from January 2010 to October 2015," available online at http://www.nyc.gov/html/ccrb/downloads/pdf/Crossing-the-Threshold-2010-2015.pdf.[3]

---

[3] The CCRB's "Crossing the Threshold" report is hereby incorporated by reference.

43. As set forth in the report, "[i]n the years from 2010 to 2014, the CCRB received between 535 and 622 complaints per year of improper entries, searches, and failures to show a warrant. In the first nine months of [2015], the CCRB received 400 such complaints." Id., at 3.

44. From January 1, 2010 through October 1, 2015, the CCRB decided 1,759 complaints of unlawful premises entry and search. Of those, 174 were substantiated. Id., at 4. Of those substantiated complaints, 33 (or 18%) of "improper entries and searches of residential premises occurred in apartment buildings owned and operated by the New York City Housing Authority." Id., at 5.

45. "In 94 substantiated complaints (52% of all substantiated complaints), officers detained, arrested, or issued summons (*sic*) to individuals after improperly entering or searching their premises." Id., at 5.

46. NYPD officials accused of unlawful entries often claim "civilians provided voluntary consent to allow police entry or search." Id., at 6. Of the 174 substantiated complaints of premises entries and searches substantiated by the CCRB since 2010, 42 (24%) "involved a dispute between officers and civilians over consent." Id. "In 19 substantiated complaints (11%) of the 174 substantiated premises and entry complaints, the CCRB found consent provided by an occupant to be involuntary and produced by police coercion." Id.

47. In 2008, the NYPD "introduced a policy... requiring certain officers to obtain a signed 'consent to search' form from an occupant when they wish to seize evidence or a wanted person within a particular location. The incidents examined by the CCRB revealed that very few officers subject to the Department's police use or attempt to use the form." Id.

48. At all times material to this complaint, defendant City failed to properly train, screen, supervise, or discipline its employees and police officers, including the officer-defendants,

8

and failed to inform the officer-defendants' supervisors of their need to train, screen, supervise or discipline the officer-defendants.

49. The City's policies, practices, customs and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of Mr. Anderson's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

50. The defendants' deprivations of Mr. Anderson's rights resulted in the injuries and damages set forth above.

**Second Claim for Relief**
**Trespass**
**Under the Laws of the State of New York**
(*Against all defendants*)

51. Mr. Anderson incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

52. The officer-defendants entered the apartment without any occupants' consent, without a warrant and without exigent circumstances, and unlawfully remained therein, thereby interfering with Mr. Anderson's right of possession.

53. The conduct of the officer-defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant City, clothed with and/or invoking state power and/or authority, and, as a result, defendant City is liable to Mr. Anderson pursuant to the state common law doctrine of *respondeat superior*.

54. The defendants' deprivations of Mr. Anderson's rights resulted in the injuries and damages set forth above.

### Third Claim for Relief
### Trespass to Chattels
### Under the Laws of the State of New York
### (*Against all defendants*)

55. Mr. Anderson incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

56. The officer-defendants entered the apartment without any occupants' consent, without a warrant and without exigent circumstances, and unlawfully remained therein. The officer-defendants thereafter physically searched through Mr. Anderson's personal belongings, including the contents of small drawers and containers, thereby interfering with Mr. Anderson's right of possession.

57. The conduct of the officer-defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant City, clothed with and/or invoking state power and/or authority, and, as a result, defendant City is liable to Mr. Anderson pursuant to the state common law doctrine of *respondeat superior*.

58. The defendants' deprivations of Mr. Anderson's rights resulted in the injuries and damages set forth above.

### Fourth Claim for Relief
### False Arrest and False Imprisonment
### Under the Laws of the State of New York
### (*Against all defendants*)

59. Mr. Anderson incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

60. By the actions described above, defendants caused to be falsely arrested or falsely arrested Mr. Anderson, without reasonable or probable cause, illegally and without a warrant, and

without any right or authority to do so, and caused him to be detained far more than 24 hours before arraignment. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Mr. Anderson and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

61. The conduct of the officer-defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant City, clothed with and/or invoking state power and/or authority, and, as a result, defendant City is liable to Mr. Anderson pursuant to the state common law doctrine of *respondeat superior*.

62. The defendants' deprivations of Mr. Anderson's rights resulted in the injuries and damages set forth above.

### Fifth Claim for Relief
### Assault and Battery
### Under the Laws of the State of New York
### (*Against all defendants*)

63. Mr. Anderson incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

64. By the actions described above, defendants did inflict assault and battery upon Mr. Anderson. The acts and conduct of defendants were the direct and proximate cause of injury and damage to Mr. Anderson and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

65. The defendants' deprivations of Mr. Anderson's rights resulted in the injuries and damages set forth above.

### Sixth Claim for Relief
### Abuse of Process
### Under the Laws of the State of New York
### (*Against all defendants*)

66. Mr. Anderson incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67. By the conduct and actions described above, the officer-defendants employed regularly issued process against Mr. Anderson, compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm Mr. Anderson without economic or social excuse or justification, and the defendants were seeking a collateral advantage (including but not limited to covering for their own misdeeds and/or using the arrests and prosecutions as a pretext to gather information about A.S.) or corresponding detriment to Mr. Anderson, which were outside the legitimate ends of the process. The acts and conduct of the officer-defendants were the direct and proximate cause of injury and damage to Mr. Anderson and violated their rights as guaranteed by the laws and Constitution of the State of New York.

68. The defendants' deprivations of Mr. Anderson's rights resulted in the injuries and damages set forth above.

### Seventh Claim for Relief
### Negligent Hiring, Screening, Retention, Supervision and Training
### Under the Laws of the State of New York
### (*Against defendant City*)

69. Mr. Anderson incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70. Defendant City negligently hired, screened, retained, supervised, and trained the officer-defendants. The acts and conduct of the officer-defendants were the direct and proximate

cause of injury and damage to Mr. Anderson and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

71. The defendants' deprivations of Mr. Anderson's rights resulted in the injuries and damages set forth above.

## Eighth Claim for Relief
## Negligence
## Under the Laws of the State of New York
### (*Against all defendants*)

72. Mr. Anderson incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

73. Defendant City owed Mr. Anderson a duty of care to maintain a police department which acts in accordance with law and for which it is ultimately responsible.

74. The officer-defendants owed Mr. Anderson a duty of care to exercise reasonable caution due diligence to ascertain probable cause before affecting his arrest.

75. The defendants, jointly and severally, breached their duty of care and negligently caused injuries, emotional distress and damage to Mr. Anderson.

76. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Mr. Anderson and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

77. The defendants' deprivations of Mr. Anderson's rights resulted in the injuries and damages set forth above.

**Ninth Claim for Relief**
**Denial of Arrestee's Right to Use a Telephone**
**New York Criminal Procedure Law § 140.20(7)**
(*Against all defendants*)

78. Mr. Anderson incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

79. As a post-arrest, pre-arraignment detainee, Mr. Anderson is part of the class of persons for whom N.Y. Crim. Pro. L. § 140.20(7) was enacted to protect.

80. In passing N.Y. Crim. Pro. L. § 140.20(7), the Legislature intended to create a private right of action for violations of its terms. Further, a private right of action for violation of the statute is consistent with the underlying purposes of the legislative scheme.

81. By repeatedly refusing to allow Mr. Anderson to use a telephone for the duration of his time in custody, without just cause, the officer-defendants denied Mr. Anderson his rights under N.Y. Crim. Pro. L. § 140.20(7).

82. The defendants' deprivations of Mr. Anderson's rights resulted in the injuries and damages set forth above.

**Jury Demand**

83. Mr. Anderson demands a trial by jury in this action on each and every one of his damage claims.

*Wherefore*, Mr. Anderson demands judgment against the defendants individually and jointly and pray for relief as follows:

    a.    That he be compensated for violation of his constitutional rights, pain, and suffering; and

    b.    That he be awarded punitive damages against the officer-defendants; and

    c.    That he be compensated for attorneys' fees and the costs and disbursements of this action; and

    d.    For such other further and different relief as to the Court may seem just and proper.

Dated:    New York, New York
May 3, 2016

Respectfully submitted,

By: _Robert M. Quackenbush_
Robert M. Quackenbush
Rankin & Taylor, PLLC
*Attorneys for the Plaintiff*
11 Park Place, Suite 914
New York, New York 10007
t: 212-226-4507
f: 212-658-9480
e: robert@drmtlaw.com
